

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 FEB -7 AM 11: 08

LORETTA G. WHYTE
CLERK

# UNITED STATES  DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DAMIAN BODE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 04-3523** |
| **BURL CAIN, WARDEN, LSP** | **SECTION "I" (6)** |

## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.

Upon review of the entire record, the Magistrate Judge has determined that this matter can be disposed of without an evidentiary hearing.  For the reasons which follow, the Magistrate Judge issues this Report and Recommendation in accordance with the applicable law, hereby recommending that the instant application for federal *habeas corpus* relief be **DENIED WITH PREJUDICE.**

___ Fee_____
___ Process_____
_X_ Dktd_____
_V_ CtRmDep_____
___ Doc. No _____

## PROCEDURAL HISTORY

Petitioner Damian Bode is a state prisoner incarcerated in the Louisiana State Penitentiary at Angola, Louisiana. On March 1, 2001, the State filed a bill of information charging petitioner with armed robbery, in violation of La. Rev. Stat. Ann. § 14:64.[1] Pursuant to a plea deal, petitioner pled guilty as charged on May 10, 2001 and was sentenced on the same date to forty (40) years imprisonment at hard labor in the Louisiana Department of Corrections, without the benefit of probation, parole, or suspension of sentence.[2] Petitioner gave notice of appeal[3] and on February 13, 2002, the Louisiana Court of Appeal for the Fifth Circuit affirmed petitioner's sentence.[4] Petitioner then sought review in the Louisiana Supreme Court, and on November 8, 2002, the high court denied petitioner's writ petition without opinion.[5]

On November 4, 2003, petitioner filed for post-conviction relief in the state trial court, but

---

[1] *See* State Rec. Vol. 1 of 3, Bill of Information dated March 1, 2001; State Rec. Vol. 2 of 3, Bill of Information dated March 1, 2001.

[2] *See* State Rec. Vol. 2 of 3, Transcript of Proceedings dated May 10, 2001; Minute Entry dated May 10, 2001; State Rec. Vol. 3 of 3, Transcript of Proceedings dated May 10, 2001; State Rec. Vol. 1 of 3, Waiver of Rights dated May 10, 2001; State Rec. Vol. 2 of 3, Waiver of Rights, dated May 10, 2001.

[3] *See* State Rec. Vol. 1 of 3, Notice of Appeal dated May 16, 2002.

[4] *See* State Rec. Vol. 1 of 3, *State v. Bode*, 01-KA-953 (La. App.5 Cir. 02/13/02), 811 So.2d 36; State Rec. Vol. 3 of 3, *State v. Bode*, 01-KA-953 (La. App. 5 Cir. 02/13/02), 811 So.2d 36. The court held that petitioner was precluded from raising an excessiveness challenge on appeal, since his sentence was imposed in conformity with the plea agreement. *See Bode*, 811 So.2d at 37. The court remanded the case back to the trial court with instructions to inform petitioner accurately concerning the prescriptive period for filing state post-conviction relief. *See Id.*

[5] *See* State Rec. Vol. 1 of 3, *State v. Bode*, 02-KA-0787 (La. 11/8/02), 828 So.2d 1109; State Rec. Vol. 3 of 3, *State v. Bode*, 02-KA-0787 (La. 11/8/02), 828 So.2d 1109.

the Twenty-Fourth Judicial District Court denied relief nine days later on November 13, 2003.[6]

Petitioner then sought a writ of review with the Louisiana Court of Appeal for the Fifth Circuit

challenging the district court's denial of post-conviction relief.[7] On February 11, 2004, the appellate

court denied petitioner's writ application.[8]  Petitioner next sought a writ of certiorari with the

Louisiana Supreme Court on March 12, 2004.[9]  The court denied relief without opinion on October

---

[6] *See* State Rec. Vol. 1 of 3, Order of the Twenty-Fourth Judicial District Court dated November 13, 2003; State Rec. Vol. 3 of 3, Order of the Twenty-Fourth Judicial District Court dated November 13, 2003. The trial court's order states that petitioner filed his application for post-conviction relief on November 4, 2003. A filing date stamp on the application contained in the state record is not visible.

[7] Petitioner gave notice of his intent to seek supervisory review of the trial court's denial of post-conviction relief on December 9, 2003. *See* State Rec. Vol.1 of 3, *State v. Bode*, 04-KH-32 (La. App. 5 Cir.).  Petitioner's attorney on post-conviction requested and was granted an extension of time to seek the appellate writ. *See* State Rec. Vol. 1 of 3, Motion for Extension of Time to Seek Writs, dated December 12, 2003. Pursuant to La. Uniform Rules Court of Appeal Rule 4-3, appellate courts may,  "upon a proper showing," extend the time for filing an application "upon the filing of a motion for extension of the return date by the applicant, filed within the original or an extended return date period." The trial court granted the extension, providing petitioner until January 8, 2004 to file his writ application with the appellate court. *See* State Rec. Vol. 1 of 3, *State v. Bode*, 04-KH-32 (La. App. 5 Cir.). While the record does not indicate the date on which petitioner filed the supervisory writ, the appellate court held that his application was timely filed. *See id.*

[8]  *See* State Rec. Vol. 1 of 3, *State v. Bode*, 04-KH-32, (La. App. 5 Cir.).

[9] *See* State Rec. Vol. 3 of 3, Original Application on Behalf of Defendant/Petitioner, 04-KP-0661 dated March 12, 2004. The clerk of court's time stamp on the application notes a receipt date of March 15, 2004. *See id.* Petitioner had thirty days, or until March 12, 2004, to file his application. La. Sup. Ct. R. X, § 5(a). However,  La. Sup. Ct. R. X, § 5(a) provides that an application, "properly mailed shall be deemed timely filed if mailed on or before the last day of the delay for filing." An advisory letter from the Louisiana Supreme Court's Clerk of Court notes that the application was post-marked on March 12, 2004. *See* State Rec.Vol. 3 of 3, Advisory Letter from John Tarlton Olivier, Clerk of Court, Louisiana Supreme Court dated March 15, 2004.

8, 2004.[10] Petitioner, through counsel, then filed the instant federal action for *habeas corpus* relief with this court on December 29, 2005.[11]

## STATEMENT OF FACTS

On January 4, 2001, the employees of Manner's Jewelers reported that a white male, who was subsequently identified as the petitioner, wearing a ski mask and armed with a handgun entered the business and demanded both money and jewelry. During the course of the robbery, the suspect removed his ski mask, allowing his face to be seen. Employees recognized the suspect as a customer of the business. The suspect obtained jewelry valued at around twenty-five thousand dollars ($25,000.00) and three hundred twelve ($312.00) dollars in cash and then fled the scene. Police performed a canvass of the area, and the suspect was located there shortly afterward and arrested. The suspect was later identified as the petitioner in the instant action.[12]

## STATUTE OF LIMITATIONS & TIMELINESS

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), petitioners seeking federal *habeas corpus* relief are subject to a one-year statute of limitations governing the time within which they may file a petition under 28 U.S.C. § 2254. 28 U.S.C. § 2244(d)(1). The one

---

[10] *See* State Rec. Vol. 3 of 3, *State v. Bode*, 04-KP-0661.

[11] *See* Fed. Rec. Doc.1, Petition for Habeas Corpus Under 28 U.S.C. § 2254 stamp dated December 29, 2004. Respondent's brief states that petitioner filed the instant action on January 4, 2005. *See* Fed. Rec. Doc. 4, Response in Opposition to Granting Writ of Habeas Corpus filed February 15, 2005, p. 3, 7.

[12] This statement of facts is taken from the opinion of the Louisiana Fifth Circuit Court of Appeal after a thorough review of the entire record. *See* State Rec. Vol. 1 of 3, *State v. Bode*, 01-KA-953 (La. App.5 Cir. 02/13/02), 811 So.2d 36; State Rec. Vol. 3 of 3, *State v. Bode*, 01-KA-953 (La. App. 5 Cir. 02/13/02), 811 So.2d 36.

year period commences from " *the latest of* the date on which the judgment became final by the conclusion of direct review *or* the expiration of the time for seeking such review." §2244 d(1)(A) (emphasis added). When a "properly filed" state post-conviction application is pending, the limitation period is tolled. §2244 d(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.") Thus, a federal court considering a petitioner's § 2254 application must extend petitioner's one-year deadline by the number of days during which his post-conviction proceedings were pending in the state courts. *See, e.g., Fields v. Johnson*, 159 F.3d 914, 916 (5th Cir. 1998) (extending petitioner's AEDPA limitations period by the ninety-one days during which his state post-conviction proceeding was pending). Respondent submits that petitioner timely filed the instant petition with five (5) days remaining in the one year limitations period.[13] The court agrees that the application is timely filed but finds that respondent's calculations are based on an incorrect federal filing date.

For purposes of Louisiana law, petitioner's conviction became final on November 8, 2002, the day the Louisiana Supreme Court denied petitioner's writ application on direct review.[14] La. Code Cr. Proc. art. 922 (D). Under the AEDPA, petitioner's conviction became final ninety (90) days later, on February 6, 2003. *See* 28 U.S.C. § 2244(d)(1)(A); *See also* Sup. Ct. R. 13(1).[15]

---

[13] *See* Fed. Rec. Doc. 4, Response in Opposition to Granting Writ of Habeas Corpus filed February 15, 2005, p. 7.

[14]*See* footnote 5 herein.

[15] Pursuant to United States Supreme Court Rule 13, petitioner had ninety (90) days from "the date of entry of the judgment or order sought to be reviewed" to petition the high court for a writ

Thereafter, petitioner had three hundred sixty-five (365) days, or until February 6, 2004, to file his federal *habeas corpus* petition under 28 U.S.C. § 2254. Contrary to respondent's assertions that petitioner filed on January 4, 2005, petitioner actually filed the instant action on December 29, 2004.[16] Since the filing date for the instant action occurred three hundred and twenty-seven (327) days after the one-year deadline, the timeliness of petitioner's filing depends on whether a "properly filed" application for state post-conviction review was pending which would have tolled the limitations period. 28 U.S.C. § 2244(d)(2).

On November 4, 2003, two hundred seventy-one (271) days after his conviction became final for purposes of the AEDPA, petitioner timely filed for post-conviction relief in state trial court, tolling AEDPA's one-year limitation period. The trial court denied relief on November 13, 2003. Petitioner then timely filed an appeal with the Louisiana Fifth Circuit Court of Appeal, which the court denied on February 11, 2004. Next, on March 12, 2004, petitioner timely sought a writ of certiorari with the Louisiana Supreme Court, which denied the application on October 8, 2004. Thus, from November 4, 2003 until October 8, 2004, a "properly filed" application for post-conviction relief was pending in Louisiana's state courts, tolling AEDPA's one-year statute of limitations.

---

of certiorari to review the Louisiana Supreme Court's denial of November 8, 2002. Petitioner did not seek such a writ with the United States Supreme Court. Therefore, his conviction became "final" for purposes of 28 U.S.C. § 2244(d)(1)(A) when his time for filing a petition for writ of certiorari with the Supreme Court had expired. *Roberts v. Cockrell*, 319 F.3d 690, 693 & n.13 (5th Cir. 2003) (citing *Flanagan v. Johnson*, 154 F.3d 196, 197 (5th Cir. 1998)). *See also Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (noting that a state level conviction becomes final upon the denial by the Supreme Court of certiorari or the expiration of the period of seeking review).

[16] *See* Fed. Rec. Doc. 1, Petition for Habeas Corpus Under 28 U.S.C. § 2254 stamp dated December 29, 2004, p. 1.

Eighty-two (82) additional days then elapsed between the Louisiana Supreme Court's October 8, 2004 denial of petitioner's post-conviction application and the filing of the instant federal petition on December 29, 2004. At the time of filing, three hundred fifty-three (353) days had elapsed, leaving petitioner with twelve (12) days remaining in which to timely file a federal petition for *habeas corpus*. The court, therefore, concludes that petitioner's application is timely filed.

## EXHAUSTION

The AEDPA requires that a petitioner "exhaust the remedies available" in the state courts before a federal court can grant *habeas corpus* relief. *See* 28 U.S.C. § 2254(b)(1)(A). AEDPA's exhaustion requirement is satisfied when "the substance of a federal habeas claim has been fairly presented to the highest state court." *Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir. 1999). "Such presentment can take place  via direct appeal *or* state habeas proceedings." *Morris v. Dretke*, 413 F.3d 484, 491 (5th Cir. 2005) (citing *Orman v. Cain*, 228 F.3d 616, 620 (5th Cir. 2000)) (emphasis added). The "fairly presented" requirement is satisfied when petitioner's federal application contains the "substantial equivalent" of the claim presented to the state court. *See Picard v. Connor*, 404 U.S. 270, 275-78 (1971).

Petitioner's federal application for *habeas corpus* relief contains two claims, both of which he presented to Louisiana's trial, intermediate appellate, and supreme court in his application for post-conviction relief.[17] Respondent concedes, and the court agrees, that petitioner has exhausted

---

[17] *See* State Rec. Vol. 1 of 3, Uniform Application for Post-Conviction Relief, No. 01-1027; State Rec. Vol. 1 of  3, Order of the Twenty-Fourth Judicial District Court dated November 13, 2003; State Rec. Vol. 3 of 3, Order of the Twenty-Fourth Judicial District Court dated November 13, 2003. Petitioner was precluded from raising these claims on direct appeal, as his conviction

the claims presented in the instant petition.

## **STANDARD OF REVIEW**

The AEDPA includes a comprehensive overhaul of federal habeas corpus legislation, including 28 U.S.C. §2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law where there has been an adjudication on the merits in State court proceedings.[18]

State court determinations of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference unless they were "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). The United States Supreme Court has advised that:

> Under the "contrary to" clause, a federal habeas corpus court may grant the writ if the

---

resulted from a guilty plea made pursuant to a plea bargain. In Louisiana, sentences imposed in conformity with a plea agreement set forth in the record at the time of the plea cannot be appealed. *See* La. Code Crim. Proc. Art. 881.2. *See also* State Rec. Vol. 1 of 3, *State v. Bode*, 04-KH-32, (La. App. 5 Cir.); State Rec. Vol. 3 of 3, Original Application on Behalf of Defendant/Petitioner, 04-KP-0661 dated March 12, 2004; State Rec. Vol. 3 of 3, *State v. Bode*, 04-KP-0661.

[18] Section 2254(d) provides in full:
> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 413 (2000); *Hill*, 210 F.3d at 485.  Questions of fact found by the state court are "presumed to be correct ... and we will give deference to the state court's decision unless it was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hill*, 210 F.3d at 485, quoting 28 U.S.C.§ 2254(d)(2).

## INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner's first claim is that his trial counsel rendered ineffective assistance in violation of the Sixth Amendment. Specifically, petitioner asserts that his attorney, at sentencing, failed both to investigate and present mitigating circumstances concerning petitioner's long-standing emotional and psychiatric problems and failed to request a reconsideration of petitioner's sentence. Respondent denies that petitioner received ineffective assistance and asserts that counsel's procurement of a plea agreement with a sentence that was fifty-nine (59) years less than the statutory maximum of ninety-nine (99) years cannot be characterized as performance that fell below an objective standard of reasonableness.

As established by the Supreme Court  in *Strickland v. Washington*, 466 U.S. 668 (1984), the standard governing claims of ineffective assistance of counsel "qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States'" for the purposes of federal review of *habeas corpus* claims under § 2254. *Williams v. Taylor*, 529 U.S. 362, 391 (2000); *Foster*

*v. Johnson*, 293 F.3d 766, 777 (5th Cir. 2002). Accordingly, petitioner is entitled to relief if the state court's adjudication of his ineffective assistance of counsel claim was either "contrary to" or involved an "unreasonable application" of *Strickland*'s standard for ineffective assistance of counsel or if the state court's decision was based on an "unreasonable determination"of the facts in light of the evidence before the court. *See Foster*, 293 F.3d at 777.

In *Strickland*, the Supreme Court held that in order to establish a violation of his Sixth Amendment right to effective assistance of counsel, a petitioner must make two showings. First, he must establish that his counsel's performance was "deficient." *Strickland*, 466 U.S. at 687. The proper standard of attorney performance, and the standard of performance to which petitioner is entitled, is that of "*reasonably* effective assistance." *Id.* (emphasis added). The deficiency showing requires that the attorney "made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*  It is the petitioner who bears the burden of demonstrating that his counsel's performance fell below an "objective standard" of reasonableness. *Id.* at 688. Furthermore, judicial evaluation of counsel's performance must be highly deferential. *See id.* at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight[,]" and due to the difficulties in making this assessment, reviewing courts must indulge a "strong presumption" that counsel's conduct fell with the wide range of performance that constitutes "reasonable professional assistance." *Id.* [19] Part of counsel's duty to provide reasonably

---

[19] Thus, the petitioner must overcome the presumption that his attorney's performance, under the circumstances, may be considered "sound trial strategy." *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

effective assistance also includes a duty to perform reasonable investigations. *See id.* at 691. Where counsel has made a less than complete investigation of the law and the facts relevant to options plausible to his client, that decision is reasonable "precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* "In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."*Id.*

Second, the petitioner must show that his attorney's deficient performance was prejudicial to his defense in order to constitute the ineffective assistance in violation of the Constitution. *See id.* at 692. The "prejudice" showing requires that the errors made by counsel were "so serious as to deprive the defendant of a fair trial ... whose result is reliable." *Id.* at 687. The defendant bears the burden of showing that there was a reasonable probability, that "*but for* counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694 (emphasis added).[20] This prejudice inquiry of the *Strickland* analysis asks whether or not counsel's deficient performance "renders the result of the trial unreliable or the proceeding fundamentally unfair." *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000).

Guilty pleas are subject to attack on the grounds that counsel did not provide the defendant with "reasonably competent advice." *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980) (quoting *McMann v. Richardson*, 397 U.S. 759, 770-71 (1970)) (internal quotations omitted). *Strickland*'s two-part test governs the disposition of claims of ineffective assistance of counsel during the guilty plea process.

---

[20] A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

11

*See Hill v. Lockhart*, 474 U.S. 52, 56-58 (1985). Where a defendant is represented by counsel during the plea process and pleads guilty on the advice of his counsel, *Strickland* requires that petitioner demonstrate that his counsel's performance fell below an objective standard of reasonable competence and that he was prejudiced by this deficient performance. *See id.*

In order to prevail under *Strickland*'s prejudice prong, petitioner must show that it was in fact "reasonably probable that *but for* the misadvice of his trial counsel he would not have pleaded guilty" and would have insisted upon going to trial. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995) (citing *Czere v. Butler*, 833 F.2d 59, 63 (5th Cir. 1987)) (emphasis added). *See also Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994) ("[I]n a guilty plea scenario, a [prisoner] must prove not only that his attorney actually erred, but also that he would not have pled guilty but for the error."). The prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 58. Petitioner's failure to establish *either* prong of the *Strickland* test necessitates a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696.

In assessing the performance of petitioner's counsel, the state district court, in resolving petitioner's application for post-conviction relief, found that petitioner's trial attorney performed "with a high standard of professional excellence" in securing for petitioner a plea agreement with a sentence of forty years out of a possible ninety-nine.[21] Applying the *Strickland* standard, the trial

---

[21] *See* State Rec. Vol. 1 of 3, Order of the Twenty-Fourth Judicial District Court dated November 13, 2003; State Rec. Vol. 3 of 3, Order of the Twenty-Fourth Judicial District Court dated November 13, 2003. The court stated:

court concluded that petitioner had not shown that his counsel had made errors such that he was not functioning as the counsel that the Sixth Amendment guarantees.[22] Furthermore, the court noted that La. Code Crim. Proc. art. 881.2(A)(2) provides that a defendant may not appeal a sentence imposed pursuant to a plea agreement.[23] On appeal of the trial court's denial of post-conviction relief, the Louisiana Fifth Circuit Court of Appeal noted that petitioner failed to present "sufficient objective proof[,]" such as medical records or independent documentation in support of his contention that he had a history of psychiatric problems. The appeals court therefore found that petitioner could not prove that the trial court had erred in denying his claim of ineffective assistance of counsel.[24]

The trial and appellate courts correctly identified and applied the appropriate *Strickland* standard in concluding that petitioner's counsel rendered reasonably effective assistance. Additionally, in this court, petitioner fails to assert attorney errors that were so serious such that they deprived him of Sixth Amendment counsel. Petitioner asserts, without evidence, that he suffers from

---

A review of the record in the instance case reveals that neither of the prongs of the *Strickland* test were met. Defendant's counsel not only did not perform deficiently, but rather performed with a high standard of professional excellence. Instead of facing ninety-nine years imprisonment, the defendant was able to obtain a forty year sentence for armed robbery committed with a handgun.

*Id.*

[22] *See id.*

[23] La. Code Crim. Proc. art. 881.2(A)(2) states that "[t]he defendant cannot appeal or seek review of a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of the plea." *See State v. Stevenson*, 778 So.2d 1165, 1166 (La. App. 5 Cir. 2001) (denying review on article 881.2(A)(2) grounds to a defendant who pled guilty to a specific sentence set forth in the plea colloquy and in the signed waiver of rights).

[24] *See* State Rec. Vol. 1 of 3, *State v. Bode*, 04-KH-32, (La. App. 5 Cir.).

"long-standing emotional and psychiatric problems" for which he has been treated at no less than eight institutions.[25] He also asserts that, on the day of the robbery, he had ingested a large quantity of prescription drugs.[26] Petitioner further claims that he told of all this information to his attorney, but his attorney failed to investigate these issues or present them to the trial judge "before, during, or after sentencing."[27] Thus, counsel's decision to fail to perform a thorough investigation of these claims will meet *Strickland*'s standard for reasonably effective assistance only if under "all the circumstances," such a decision was reasonable. 466 U.S. at 690.

In this case, the court finds that counsel's failure to investigate petitioner's emotional, psychiatric, and substance issues appears to have resulted from a reasonable professional decision to forego investigation and seek a plea deal.[28] Counsel was presented with overwhelming evidence

---

[25] Fed. Rec. Doc. 1, Petition for Habeas Corpus Under 28 U.S.C. § 2254, stamp dated December 29, 2004, p. 4. Petitioner includes no hospital, psychiatric or other medical records in support of his claim.

[26] *See id.*

[27] *Id.*

[28] Attorney choices to bargain with prosecutors for leniency rather than pursue mental capacity, or other health history or substance abuse issues in instances where a defendant faces a large maximum sentence if convicted have been upheld against claims of ineffective assistance of counsel. *See Williams v. Smith*, 888 F.2d 28, 30 (5th Cir. 1989) (explaining that it was not necessary to decide whether attorney's failure to investigate was deficient performance because petitioner could not show that he would have insisted upon going to trial had the attorney explained to him potential defenses concerning his drug abuse); *Thompson v. Blackburn*, 776 F.2d 118, 124 (5th Cir. 1987) (stating that an attorney is not ineffective for failing proceed on a plea of not guilty by reason of insanity where the defendant has already confessed to the crimes charged and no insanity defense would be supportable); *Sloan v. Estelle*, 710 F.2d 229, 231-32 (5th Cir. 1983) (noting that an attorney's choice to strike a bargain rather than pursue the issue of his client's mental capacity did not constitute ineffective assistance where the defendant, who was rational throughout the proceedings, could have faced the death penalty on at least two charges).

14

of petitioner's guilt as the perpetrator of an armed robbery, including: petitioner's removal of his ski mask during the robbery, the subsequent identification of petitioner by employees of Manner's Jewelers, and a confession by petitioner that he robbed the business, evidence which petitioner does not contest.[29]  The armed robbery statute,  La. Rev. Stat. Ann. § 14:64(B), provides a minimum sentence of ten years at hard labor and a maximum sentence of not more than ninety-nine years at hard labor for a person convicted.[30]  Given the evidence, petitioner's confession to the crime and the potential maximum sentence,  counsel apparently chose to bargain with prosecutors for leniency for his client rather than proceed to trial. Petitioner, accordingly, has not demonstrated that his counsel's performance fell below *Strickland*'s objective standard of reasonableness. Therefore, this court need not address whether petitioner was prejudiced by his attorney's actions. *See Murray v. Maggio*, 736 F.2d 279, 282 (5th  Cir. 1984) ("A claim [of ineffective assistance of counsel] may be disposed of

---

[29] *See* State Rec., Vol. 1 of 3, Arrest Report and Probable Cause Affidavit dated January 4, 2001; State Rec., Vol. 2 of 3, Arrest Report and Probable Cause Affidavit dated January 4, 2001. *See also* State Rec., Vol. 2 of 3, Defendant's Exhibit 3, Keith O'Brien, *Bungling Gem Robber Easy to Find, Police Say*, TIMES PICAYUNE, Jan. 6, 2001, at A1.

[30] La. Rev. Stat. Ann. § 14:64 provides:

A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.

B. Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence.

for either reasonable performance of counsel or lack of prejudice, without addressing the other.").[31] Accordingly, petitioner's claim on this issue must fail.

## INVOLUNTARY GUILTY PLEA

Petitioner's second claim is that his plea to the forty (40) year sentence for armed robbery was induced by an "unfulfillable promise" by trial counsel that petitioner's sentence could be reviewed and reduced by Louisiana's appellate courts.[32] Respondent claims that petitioner's reliance on his attorney's erroneous prediction of leniency did not render his guilty plea involuntary where the attorney has made a mere inaccurate prediction regarding a lesser sentence for the petitioner.

In *Boykin v. Alabama*, the Supreme Court held that when a defendant pleas guilty to a crime, he waives several constitutional rights,[33] necessitating that the plea be entered intelligently and voluntarily. *See* 395 U.S. 238, 242-43 (1969) ("What is at stake for an accused [pleading guilty] demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a *full understanding* of what the plea connotes and of its consequence.") (emphasis added). The record must "affirmatively establish" this knowing and voluntary waiver. *Id.*

---

[31] Assuming, *arguendo* that counsel's performance was deficient, petitioner has failed to show that he was prejudiced by counsel's advice. *Strickland*'s prejudice prong requires that petitioner show a "reasonable probability that, but for counsel's errors, he would have not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. Petitioner has made no showing that he would have insisted on going to trial but for counsel's failure to present evidence of his mental problems.

[32] Fed. Rec. Doc.1, Petition for Habeas Corpus Under 28 U.S.C. § 2254, stamp dated December 29, 2004, p. 5.

[33] Included in this waiver are the Fifth Amendment's privilege against compulsory self-incrimination, the right to a trial by jury, and the right to confront one's accusers. *See Boykin*, 395 U.S. at 243.

at 242. A "voluntary" plea is one "entered by one fully aware of the direct consequences including the actual value of any commitments made to him by the court, prosecutor, or his own counsel *must stand* unless induced by threats[,] ... [or] misrepresentation (including unfulfilled or unfulfillable promises) ...."*Brady v. United States*, 397 U.S. 742, 755 (1970) (quoting *Shelton v. United States*, 246 F.2d 571, 572 n.2 (5th Cir. 1972) (emphasis added) (internal quotations omitted).Where a defendant, in open court, makes a "solemn declaration[,]" such declarations carry a "presumption of verity[;]" petitioner faces a heavy burden in proving entitlement to relief. *Blackledge v. Allison*, 431 U.S. 63, 73 (1977).

The law is clear that where an unfulfilled state promise is made in exchange for a guilty plea, a petitioner is entitled to *habeas corpus* relief. *See McNeil v. Blackburn*, 802 F.2d 830, 832 (5th Cir. 1986). When, however, a petitioner pleads guilty on the basis of a promise made by the prosecutor or his own defense attorney, irrespective of whether such promise is fulfillable, "breach of that promise *taints the voluntariness* of his plea." *Smith v. Blackburn*, 785 F.2d 545, 548 (5th Cir. 1986) (quoting *McKenzie v. Wainwright*, 632 F.2d 649, 651 (5th Cir. 1980)) (emphasis added). In order to obtain federal *habeas corpus* relief based on alleged promises that are inconsistent with representations made in open court when his guilty plea was accepted, a petitioner must prove: "1) exactly what the terms of alleged promises were; 2) exactly when, where, and by whom such a promise was made; and 3) the precise identity to an eyewitness to the promise." *United States v. Smith*, 915 F.2d 959, 963 (5 Cir. 1990) (quoting *Harmason v. Smith*, 888 F.2d 1527, 1529 (5th Cir. 1989)) (internal quotations omitted). Petitioner's reliance on his trial counsel's "erroneous prediction of leniency" is not sufficient to render a guilty plea involuntary. *Hollis v. United States*, 687 F.2d

257, 260 (8th Cir. 1982), *cited in United States v. Stumpf*, 827 F.2d 1027, 1030 (5th Cir. 1987).

Disposing of petitioner's post-conviction claim that his plea was induced, the Louisiana Fifth

Circuit Court of Appeal stated:

> This Court, relying on La. C.Cr.P. art. 881.2(A)(2), did not review defendant's sentence on appeal because defendant's sentence was imposed in conformity with a plea agreement that was set forth in the record at the time of the plea.
>
> First, [petitioner did] not present objective support for this "unfulfillable promise." Second, our review of the transcript of relator's guilty plea proceeding reflects that defendant was informed by the trial judge that "by entering this plea, you are waiving or giving up your rights to an appeal" and defendant stated that he understood. Accordingly, we find no error in the trial court's denial of [petitioner's] second claim.[34]

As noted by the appellate court, the trial transcript contains the following colloquy between

petitioner and the trial court:

> The Court: Mr. Bode, your attorney has indicated to me that he has advised you of your rights to a trial by jury[,] to confront your accusers[,] against self-incrimination. Now, by entering this plea, you are waiving and giving up these [] rights, is that correct?
> Mr. Bode: Yes, ma'am.
> The Court: I'm going to explain the nature of the crime to you and the consequences of your guilty plea. If you have any questions, stop me and I'll answer your questions....
> The Court: Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another by use of force or intimidation while armed with a dangerous weapon. This occurred on the 4th day of January in the year of 2001?
> Mr. Bode: Yes, ma'am.
> The Court: You understand the maximum penalty is 99 years at hard labor without benefit of probation, parole or suspension of sentence?
> Mr. Bode: Yes, Your Honor.
> The Court: You understand that the minimum is 15 years?

---

[34] State Rec. Vol. 1 of 3, *State v. Bode*, 04-KH-32, (La. App. 5 Cir.)

Mr. Bode: Yes ma'am....

The Court: Do you understand that this plea is your decision and that no one can force you to plea?

Mr. Bode: Yes, ma'am.

The Court: has anyone forced you, threatened you or a member of your family in order to enter this plea today?

Mr. Bode: No, ma'am.

The Court: Have you been advised by your Counsel that in the event the Court accepts your plea, you will sentenced to serve 40 years in the Department of Corrections at hard labor without the benefit of probation, parole or suspension of sentence?

Mr. Bode: Yes, ma'am....

The Court: You have the right to a trial by jury, which the jury may find you guilty as charged, guilty of a lesser crime or not guilty. Mr. Archer is here today to represent you at trial. Do you understand that by entering this plea, you are waiving or giving up these rights?

Mr. Bode: Yes, ma'am....

The Court: If you were to go on trial, in the event of a conviction, you would have the right to an appeal. If you cannot afford an attorney to represent you on appeal, one would be appointed to represent you. Do you understand that by entering this plea, you are waiving or giving up your rights to an appeal?

Mr. Bode: Yes, ma'am.

The Court: Do you have a question about that?

Mr. Bode: No ma'am....

Mr. Mary: If the court accepts your guilty plea, you do not have the right to assert any allegations of defect – ... – in the fact that the State might not be able to prove this charge or that a jury would find you not guilty. Do you understand that by entering this plea, you are waiving or giving up these rights?

Mr. Bode: Yes ma'am.

The Court: You understand that by entering this plea, you are telling this Court that you have, in fact, committed this crime.

Mr. Bode: Yes sir.

The Court: Mr. Archer, you're satisfied that your client has knowing, willingly, intelligently, freely and voluntarily entered this plea?

Mr. Archer: Yes ma'am....

The Court: Mr. Bode, you acknowledge that all of your rights have been explained to you by your attorney and by neither trial judge and that you are waiving and giving up those rights today?

Mr. Bode: Yes ma'am.

The Court: And you further acknowledge that your act of pleading guilty is a knowing, intelligent, freely and voluntary act on your part?

Mr. Bode: Yes ma'am.[35]

As the foregoing plea colloquy demonstrates, petitioner made a knowing and voluntary guilty plea affirmatively established on the record. As such, his waiver of constitutional protections and admission of guilt and are entitled to a presumption of verity. Petitioner answered in the affirmative when the trial court asked him whether he understood that he was giving up his right to an appeal. Furthermore, petitioner makes no showing in his instant federal application concerning exactly when or where the promise that the sentence could be appealed was made or produced names of the precise identity of an eyewitness to the promise. With respect to the exact terms of the promise to appeal, petitioner alleges only that he asked his counsel if his sentence could be appealed and that counsel apparently replied that petitioner could appeal and had a good chance of having the sentence reduced. Counsel's erroneous prediction that petitioner had a good chance that his sentence would be reduced is not sufficient to render a guilty plea involuntary. Accordingly, his claim on this issue must fail.

In summary, petitioner has not established that his trial counsel rendered ineffective assistance for failing to investigate and present mitigating circumstances concerning petitioner's longstanding emotional and psychiatric problems. Petitioner also failed to establish that his guilty plea to the armed robbery charge was involuntarily induced by an unfulfillable promise that the sentence could be reviewed and reduced. In disposing of the claims raised in the instant petition, the Louisiana's Fifth Circuit Court of Appeals' denial was not "contrary to" nor did it involve an

---

[35] State Rec. Vol. 2 of 3, Transcript of Proceedings dated May 10, 2001; State Rec. Vol. 3 of 3, Transcript of Proceedings dated May 10, 2001. *See also* State Rec. Vol. 1 of 3, Waiver of Rights, dated May 10, 2001; State Rec. Vol. 2 of 3, Waiver of Rights dated May 10, 2001.

"unreasonable application" of "clearly established Federal law." 28 U.S.C. § 2254(d)(1). As such,

petitioner is not entitled to federal *habeas corpus* relief.

## RECOMMENDATION

It is hereby **RECOMMENDED** that the petition for writ of habeas corpus filed by

**DAMIAN BODE** be **DENIED WITH PREJUDICE.**

A party's failure to file written objections to the proposed findings, conclusions, and

recommendation in a magistrate judge's report and recommendation within ten (10) days after being

served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal

the unobjected-to proposed factual findings and legal conclusions accepted by the district court,

provided that the party has been served with notice that such consequences will result from a failure

to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this _____ 7th _____ day of _____ February _____, 2006.

LOUIS MOORE, JR.
United States Magistrate Judge